WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Rosemary Valenzuela,                    )     No. CV 11-812-TUC-HCE
                                        )
              Plaintiff,                )     **ORDER**
                                        )
vs.                                     )
                                        )
                                        )
Carolyn W. Colvin, Acting Commissioner) )
of the Social Security Administration,  )
                                        )
              Defendant.                )
                                        )
                                        )
_____)

        Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent.  *See* 28 U.S.C. § 636(c).

        Pending before the Court are Plaintiff's Opening Brief (Doc. 16) (hereinafter "Plaintiff's Brief"), Defendant's Opposition to Plaintiff's Opening Brief (Doc. 21) (hereinafter "Defendant's Brief"), and Plaintiff's Reply Brief (Doc. 24).  The Court takes judicial notice that Michael J. Astrue is no longer Commissioner of the Social Security Administration (hereinafter "SSA").  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court  substitutes the new Acting Commissioner of the SSA, Carolyn W. Colvin, as the named Defendant in this action. For the following reasons, the Court will remand this action for further administrative proceedings.

I.      PROCEDURAL HISTORY

On July 24, 2008, Plaintiff protectively filed with the SSA an application for disability insurance benefits under Titles II and XVIII of the Social Security Act.   (TR. 125-26). Plaintiff alleges that as of March 31, 2008, she has been unable to work due to: a torn rotator cuff in her right shoulder; high blood pressure; bulging discs; numbness, tingling, and swelling in her right hand and arm; fatigue; and constipation.  (TR. 145).     Plaintiff's application was denied initially and on reconsideration, after which Plaintiff requested a hearing before an administrative law judge. (TR. 80-83, 85-89).  The matter came on for hearing on February 23, 2010 before Administrative Law Judge (hereinafter "ALJ") M. Kathleen Gavin. (TR. 43-75).  At the hearing, Plaintiff, who was represented by counsel, and Vocational Expert (hereinafter "VE") Tracy Young testified.  On May 26, 2010, the ALJ issued her  decision denying Plaintiff's claim. (TR. 14-29). Plaintiff appealed, and on October 26, 2011, the Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's October 26, 2011decision the final decision of the Commissioner. (TR. 5-8).  Plaintiff then initiated the instant action.

II.      INTRODUCTION

Plaintiff was born on July 14, 1961, and was 46 years of age at the time of her alleged disability onset date.  (TR. 27, 125).   Plaintiff has a high school education.  (TR. 150). Plaintiff last worked as an assistant cook from 2007 through 2008.  (TR. 153).   Her past work experience includes cashier at various businesses, fast food fryer, hostess, housekeeper at a motel and a nursing home, and slot attendant at a casino.  (*Id.*).

III.      THE ALJ'S FINDINGS

A.      Claim Evaluation

SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step sequential process.  20 C.F.R. §§404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in substantial gainful activity, then ALJ the proceeds to step two which requires a determination of whether the claimant has a medically

severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).
If the ALJ makes a finding of severity, then the ALJ proceeds to step three which requires
a determination of whether the impairment meets or equals one of several listed impairments
that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.
20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1.  If the claimant's
impairment meets or equals one of the listed impairments, then the claimant is presumed to
be disabled and no further inquiry is necessary.   If a decision cannot be made based on the
claimant's then current work activity or on medical facts alone because the claimant's
impairment does not meet or equal a listed impairment, then evaluation proceeds to the fourth
step.   The fourth step requires the ALJ to consider whether the claimant has sufficient
residual functional capacity (hereinafter "RFC")[1] to perform past work.    20 C.F.R. §§
404.1520(e), 416.920(e).  If the claimant cannot perform any past work due to a severe
impairment, then the ALJ must move to the fifth step which requires consideration of the
claimant's RFC to perform other substantial gainful work in the national economy in view
of claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(f). 416.920(f).

B.    The ALJ's Decision

The ALJ considered Plaintiff's claim through Step 5 of the sequential evaluation
process.    In pertinent part, the ALJ found that Plaintiff "has the following severe
impairments: degenerative disc disease of the lumbar spine; obesity; myalgia; depression;
somatoform disorder; post traumatic stress disorder (PTSD)...", but that Plaintiff did not have
an impairment or combination of impairments that meets or medically equals one of the listed
impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 19, 22).  The ALJ further
determined that Plaintiff:

> has the residual functional capacity to perform work at the light exertional
> level; she is able to do simple work with minimum contact with the general
> public; she should do no repetitive overhead work; no climbing of ropes,
> ladders or scaffolding; no unprotected heights; no hazardous equipment due

[1]RFC is defined as that which an individual can still do despite his or her limitations.
20 C.F.R. §§ 404.1545, 416.945.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to her balance issues; and other postural functions can be performed occasionally.

(TR. 23).  The ALJ concluded that although Plaintiff was unable to perform past relevant work, Plaintiff could perform other work that exists in significant numbers in the national economy.[2]  (TR. 27-28).  Consequently, the ALJ found that Plaintiff was not disabled under the Social Security Act.  (TR. 29).

## IV.   DISCUSSION

### A.   Argument

Plaintiff asserts that the ALJ improperly rejected opinions from Plaintiff's treating physicians regarding her physical and mental limitations.  (Plaintiff's Brief, pp. 8-10).  Plaintiff also argues that the ALJ improperly discounted her credibility and improperly rejected lay witness statements. (*Id.* at pp. 11-13).

Defendant contends that the ALJ reasonably considered and weighed the opinions from the medical sources.  (Defendant's Brief, pp. 10-16).  Defendant also contends that the ALJ reasonably determined that Plaintiff's allegations concerning the limiting effects of her symptoms were not credible.  (*Id.* at pp. 16-21).  Defendant further argues that the ALJ properly rejected the lay witness statements.  (*Id.* at pp. 21-22).

### B.   Standard of Review

An individual is entitled to disability insurance benefits if he or she meets certain eligibility requirements and demonstrates the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423, 1382.  "'A claimant will be found disabled only if the impairment is so severe that, considering age, education, and work

---

[2]The ALJ based her finding that Plaintiff could do other work on the VE testimony.  (TR. 28-29).  The VE identified the following "representative occupations...": "production worker (e.g., production assembler, found in the *Dictionary of Occupational Titles* (DOT) at 706.687-010)...; production helper (e.g., advertising material distributor DOT 230.687-010)...; and inspector (e.g., garment inspector DOT 789.687-070)...."  (TR. 28).

experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy.'" *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work. *Lockwood v. Commissioner of Social Security,* 616 F.3d 1068, 1071 (9th Cir. 2010).  Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing that the claimant is not disabled. *Id.*  The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098.  Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Moreover, the Commissioner, not the court is, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence and determine the case accordingly. *Matney,* 981 F.2d at 1019. However, the Commissioner's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett,* 180 F.3d at 1098 (*quoting Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998)). Rather, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (*quoting Penny*, 2 F.3d at 956).

C.      Analysis

1.      Credibility Assessment

Plaintiff testified that she cannot work because of pain from her neck down her back to her legs. (TR. 52). She suffers from muscle spasms and numbness from her lower back down her legs. (*Id.*). She also feels pain in both shoulders and has swelling and tingling in her wrists. (TR. 48). She experiences dizziness and loss of balance. (TR. 48, 56). She uses a walker and wears wrist braces, both of which were prescribed by her doctors. (TR. 56). In addition to taking medication, such as Percocet[3], she undergoes injections to her shoulders and hands, acupuncture treatment, and she also uses heat and ice. (TR. 54, 57 (*see also* TR. 55 (medication makes Plaintiff "really drowsy")). Due to back pain, Plaintiff cannot lift and carry more than 5 pounds. (TR. 56-57).

Plaintiff also suffers from depression which she believes is caused from having been repeatedly sexually abused by her father when she was a child. (TR. 58; *see also* TR. 602 (Plaintiff was sexually abused by her father from the time she was six years of age to when she was 16 years of age)). Plaintiff experiences flashbacks, anxiety, anger, panic attacks, and becomes agitated with strangers. (TR. 60, 63). She stays at home and does not go out if she does not have to because she "get[s] angry" and has "been blowing up quite a bit...." (TR. 60).

At times, Plaintiff has difficulty dressing herself due to pain and stiffness in her shoulders. (TR. 62, 209). Plaintiff goes grocery shopping with her boyfriend, and he does most of the cooking. (TR. 61-62). Plaintiff has not driven since 2008 due to blackouts and drowsiness from medication. (TR. 63).

The ALJ found that Plaintiff's "testimony with regard to the severity and functional consequences of her symptoms was not fully credible..." as follows:

---

[3]Plaintiff's other medications include: Meclizine HCL, Methocarbamol, Cymbalta, Levoxyl, Morphine Sulfate, Gabapentin, Lactulose, Ultram, Lisinopril, and Loratadine. (TR. 240).

> [I]n reviewing the medical record as a whole, there are a number of other inconsistencies contained therein which cast doubt regarding the credibility of the claimant's testimony. Two common side effects of prolonged and/or chronic pervasive pain are weight loss and diffuse atrophy or muscle-wasting. There is no record of the claimant having lost weight since the alleged date of disability onset. There is also no record in any of the clinic notes regarding diffuse atrophy or muscle-wasting. It can also be inferred that, although claimant undoubtedly experiences some degree of pain, that pain has apparently not altered the use of his [sic] muscles and joints to the extent that it has resulted in diffuse atrophy or muscle-wasting. The record documents the claimant's weight consistently in the 180-pound range.
>
> As to the effectiveness of treatment, the claimant's testimony as to debilitating symptoms would indicate a failure of treatment. However, the claimant is not fully credible. There is no evidence of intensification of treatment which could be expected if the claimant were suffering as alleged.

(TR. 25).

Plaintiff argues that the ALJ's reasons for discrediting her testimony are inadequate because intensified treatment would not improve her condition given the nature of her impairments. (Plaintiff's Brief, p. 11). Plaintiff also points out that lack of muscle atrophy and weight loss are not material to her case. (*Id.*).

When assessing a claimant's credibility, the "ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007) (internal quotation marks and citation omitted). However, where, as here, the claimant has produced objective medical evidence of an underlying impairment that could reasonably give rise to the symptoms and there is no affirmative finding of malingering, the ALJ's reasons for rejecting the claimant's symptom testimony must be clear and convincing.[4] *Carmickle v. Commissioner, Social Security Admin.,* 533 F.3d 1155, 1160-

---

[4]Defendant argues that the "clear and convincing" standard for discounting credibility exceeds that required in *Bunnell v. Sullivan,* 947 F.2d 341, 345-346 (9th Cir. 1991) (*en banc*) where the Ninth Circuit stated that an ALJ's credibility findings must be supported by the record and "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (Defendant's Brief, pp. 16-17 (*quoting Bunnell,* 947 F.2d at 345-346 (internal quotation marks and citations omitted)). Defendant points out that no Ninth Circuit panel applying the clear and convincing standard has sat *en banc* and, therefore, *Bunnell* has not been overturned. (*Id.*). Defendant's position is unavailing. First, "a requirement of 'clear and convincing reasons' is distinct from a clear

61 (9th Cir. 2008) ("We have consistently held that where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons[]'" unless there is affirmative evidence of malingering); *Tommasetti,* 533 F.3d at 1040; *Orn,* 495 F.3d at 635*; Robbins,* 466 F.3d at 883. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen,* 80 F.3d at 1284; *see also Orn,* 495 F.3d at 635 (the ALJ must provide cogent reasons for the disbelief and cite the reasons why the testimony is unpersuasive). In assessing the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

---

[and] convincing evidentiary standard. *Cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1216) (9th Cir.2005) ('To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.' ...)." *Provencio v. Astrue,* 2012 WL 2344072, *11 n. 5 (D.Ariz. June 20, 2012). Second, as Defendant points out, *Bunnell* itself requires that the ALJ "specifically make findings..." that are supported by the record, to support the conclusion that the claimant's allegations of severity are not credible. *Bunnell,* 947 F.2d at 345. Further, these findings must be "sufficiently specific to allow a reviewing court to conclude that the..." ALJ rejected the testimony on permissible grounds. *Id.* at 345-346. The District Court for the District of Arizona has noted that "[s]ubsequent cases have merely explained that 'unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.' *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir.2006) (emphasis added); see also *Lingenfelter v. Astrue* 504 F.3d 102[8], 1036 (9th Cir.2007). Thus, the cases applying the 'clear and convincing' standard in no way overturn *Bunnell.* Numerous cases have applied the 'clear and convincing' standard, and this Court is in no position to overrule them. *See, e.g., Taylor v. Comm'r of Soc. Sec. Admin*., [659 F.3d] 1228, 1234 (9th Cir.2011); *Vasquez v. Astrue*, 572 F.3d...[586, 591 (9th Cir. 2009)]; *Lingenfelter,* 504 F.3d at 1036; *Orn*, 495 F.3d at 635; *Robbins*, 466 F.3d at 883; *Smolen v. Chater*, 80 F.3d...[1273, 1281 (9th Cir. 1996)]; *Dodrill* [*v. Shalala*], 12 F.3d...[915, 918 (9th Cir. 1993)]." *Provencio,* 2012 WL 2344072 at *11 n.5. Moreover, as discussed below, although the ALJ set forth specific   reasons for rejecting Plaintiff's credibility, those reasons are not permissible and/or supported by the record. Thus, the ALJ's credibility finding fails under Defendant's proposed standard as well as the "clear and convincing" standard.

1   prior inconsistent statements about the symptoms, and other testimony from the claimant that

2   appears less than candid; unexplained or inadequately explained failure to seek or follow a

3   prescribed course of treatment; the claimant's daily activities; the claimant's work record;

4   observations of treating and examining physicians and other third parties; precipitating and

5   aggravating factors; and  functional restrictions caused by the symptoms. *Lingenfelter,* 504

6   F.3d at 1040;  *Robbins,* 466 F.3d at 884; *Smolen,* 80 F.3d at 1284.

7          Plaintiff is correct that, on the instant record, the ALJ's reference to Plaintiff's lack

8   of weight loss, diffuse atrophy or muscle wasting does not undermine Plaintiff's credibility.

9   Neither the ALJ nor Defendant cite to any statement by any medical provider of record

10  indicating that diffuse atrophy or the other side effects mentioned by the ALJ would

11  necessarily accompany Plaintiff's impairments. The Ninth Circuit has affirmed the denial of

12  benefits where, *inter alia,* the plaintiff alleged she had to maintain a fetal position all day

13  because of constant pain but she exhibited no physical signs including muscle atrophy of a

14  totally incapacitated person. *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999).  Plaintiff's

15  case is distinguishable from *Meanel.*  Plaintiff does not claim to be totally incapacitated.

16  Moreover, the instant record reflects that Plaintiff attended physical therapy for her right

17  shoulder beginning in 2007.  (*See* TR. 302).  By July 8, 2008, Plaintiff had completed 25

18  visits and, because Plaintiff's "symptom reduction has been slow" a request was submitted

19  for additional physical therapy visits "to assist reduce pain". (TR. 296-97 (also requesting

20  a cervical traction device)).   In December 2008, Plaintiff was referred to physical therapy,

21  this time, for low back and left knee pain, and the record reflects that physical therapy was

22  ongoing through at least April 2009, when six additional visits were requested.  (*See* TR.

23  480-482; *see also* TR. 209 (in December 2008 Plaintiff stated that she attends physical

24  therapy approximately twice a week and that she attempts home "therapy exercises, as

25  prescribed by my doctor....")). Additionally, Plaintiff moves about her home during the day

26  seeing to her personal needs, caring for her pets, and performing light household chores

27  punctuated with rest periods.  (TR. 209-13).  Arguably, these activities forestalled diffuse

28

1   atrophy and/or muscle wasting.  There is no basis on this record to disbelieve Plaintiff
2   because she did not exhibit signs of diffuse atrophy or muscle wasting.

3       Nor should Plaintiff be disbelieved because she did not lose weight.  No evidence of
4   record supports the conclusion that Plaintiff's impairments would have resulted in weight
5   loss.  Plaintiff stated that she was less mobile due to her condition.  (TR. 210 ("My mobility,
6   flexibility, and ambulation has been significantly impacted by my condition.")).  Further, the
7   ALJ included obesity in her findings of Plaintiff's severe impairments established by the
8   medical evidence.  (TR. 19)  Just as the ALJ has used Plaintiff's lack of weight loss to
9   undermine her pain testimony, so could Plaintiff's continued obesity be attributed to
10  inactivity caused by pain resulting from her impairments. The record simply does not support
11  the ALJ's reliance on lack of weight loss to discredit Plaintiff's credibility. Consequently,
12  the ALJ's reliance on same to discredit Plaintiff's credibility was in error.

13      Additionally, the substantial evidence of record does not support the ALJ's reliance
14  on lack of "evidence of intensification of treatment..."  to discount Plaintiff's credibility.
15  (TR. 25).  Plaintiff underwent rotator cuff surgery in 2008.  (TR. 250-51).   Subsequent to
16  arthroscopic left knee scope in March 2009, Plaintiff underwent a course of physical therapy
17  culminating, in April 2009, in a request for additional visits and a TENS unit.[5]  (*See* TR. 482
18  ("We also highly recommend that she receive a TENS Unit to assist pain management...."));
19  (TR. 533 (in February 2009, Plaintiff's treating physician indicated he "will order a TENS
20  unit to see if it will help her chronic back pain.  Continue percocet/morphine...", and  he
21  considered steroid injections to Plaintiff's knee)).  The record also reflects that Plaintiff has
22  received injections in her hands and shoulders.  (TR. 57, 550).  In sum, the record reflects
23  that Plaintiff has sought treatment for her impairments and resultant symptoms and she has
24  undergone a range of treatments, including invasive approaches such as shoulder surgery and
25  arthroscopic left knee scope.  Further, she is taking strong painkillers such as Percocet and

26

27
28      [5]The physical therapy note reflects that Plaintiff suffered from lumbar radiculopathy
    as well as left knee pain.  (TR. 482).

1  Morphine. Moreover, in March 16, 2009, on a follow-up visit subsequent to an arthroscopic

2  left knee scope, Plaintiff's physician noted that "these degenerative changes are pretty much

3  irreversible although we do [sic] clean up the joint." (TR. 472; *see also* TR. 248 (Dr. Swe's

4  2007 diagnosis of degenerative arthritis in the knees)). Neither Defendant nor the ALJ cite

5  other "intensifi[ed]" (TR. 25) treatment options available to treat Plaintiff.

6       In sum, the reasons cited by the ALJ for discounting Plaintiff's subjective complaints

7  are not supported by clear and convincing evidence.

8                    2.     Limitation on use of upper extremities

9       With regard to Plaintiff's upper extremities, the ALJ found that Plaintiff should do no

10  repetitive overhead work, but did not find any other limitations despite limitations indicated

11  by Plaintiff's treating doctors. (TR. 23; *see also* TR. 513, 545). Plaintiff argues that in

12  reaching this determination, the ALJ improperly relied upon the opinion from consulting

13  examining doctor, Jerome Rothbaum, M.D.

14       On September 30, 2008, Dr. Rothbaum stated:

15        It is anticipated within the 12-month period of time the claimant will not have

16        any problems with handling, fingering, and feeling, nor problems with reaching with the left arm. She may still have some residual difficulty with complete ability to extend the right arm and shoulder to a full 165 degrees

17        even at that time.

18  (TR. 416). Dr. Rothbaum did not indicate whether Plaintiff was frequently, occasionally, or

19  totally limited with regard to handling, fingering, or feeling. (*See id.*). The ALJ noted that

20  Dr. Rothbaum "opined that within 12 months, the claimant should not have any problems

21  with handling, fingering and feeling, nor problems reaching with the left arm." (TR. 26).

22  The ALJ gave Dr. Rothbaum's opinion "substantial weight as being based on a thorough

23  examination and review of the record. It is consistent with the evidence at the hearing level."

24  (*Id.*). Plaintiff challenges the ALJ's finding because "the Commissioner is ignoring the

25  consistent findings of multiple treating and examining doctors, including Dr. Rothbaum[,]

26  and relying on Dr. Rothbaum's speculative comments into the future." (Plaintiff's Brief, p.

27  9).

28

As early as 2007, Plaintiff complained of joint pain mainly in her hands and wrists that sometimes radiated to her forearms, arms, and neck.[6] (TR. 246). For these complaints, Plaintiff's primary care doctor, Adalberto Renteria, M.D., referred her to rheumatologist Kyaw Swe, M.D. (*Id.*). On examination, Dr. Swe found Plaintiff had trace synovitis in her metacarpophalangeal joints; reduced range of movement in her right shoulder; and mild subluxation in her wrists bilaterally, though range of movement in her wrists was good. (TR. 247-48). Dr. Swe noted that a wrist x-ray showed no fractures or erosions and that an April 2007 nerve conduction study showed no evidence of carpal tunnel syndrome. (TR. 248). Dr. Swe diagnosed Plaintiff with inflammatory arthritis in her hands and wrists. (*Id.*). Dr. Swe also diagnosed right subacromial bursitis. (*Id.*). Plaintiff was already taking Percocet for pain and Dr. Swe added piroxicam. (TR. 246, 248).

Later, in February 2008 when Plaintiff saw Joseph E. Sheppard, M.D., for rotator cuff injury, she also complained of "some swelling in the right hand." (TR. 344). In July 2008, on follow-up for rotator cuff repair, Plaintiff complained of swelling in her wrist and hand. (TR. 339). Dr. Sheppard found that Plaintiff had mild diffuse tenderness along her forearm and that her finger motion was full. (*Id.*). Dr. Sheppard's assessment was status-post rotator cuff reconstruction with satisfactory progress and right wrist and hand swelling of indeterminate etiology. (*Id.*). Examination of Plaintiff's shoulder revealed 160 degrees of forward flexion, 150 degrees of abduction, and grade 4/5 strength, all with normal sensation. (*Id.*). He indicated that "from the shoulder standpoint I think [it] is okay to return" to her work as an assistant cook. (*Id.*). He recommended that she continue with a home exercise program. (*Id.*).

On September 29, 2008, Plaintiff reported to her primary care physician, Dr. Renteria, that she had fallen and was experiencing right hand pain that radiated to her left arm. (TR. 382). On physical examination, Dr. Renteria found right shoulder tenderness, swelling in the

---

[6]Plaintiff also complained about back and knee pain at this time. However, for purposes of the instant discussion, review of the pertinent records is limited to Plaintiff's upper extremities.

right hand as well as moderate pain with motion.  (TR. 383).  Dr. Renteria's diagnosis included shoulder pain and contusion of the wrist.  (*Id.*).  He wrapped Plaintiff's right wrist in an ace bandage and advised Plaintiff to use an arm sling for one week.  (*Id.*).  Plaintiff was to continue on Percocet and prescribed muscle relaxers.  (*Id.*).

The following day, September 30, 2008, Dr. Rothbaum, conducted a consultative medical examination of Plaintiff.  (TR. 411-14).  Plaintiff's chief complaints included shoulder pain and inability to rotate her shoulder effectively subsequent to rotator cuff injury and surgery, swelling of her right hand for the past year, and a recent fall on her right hand causing her to wrap her wrist in an ace bandage. (TR. 412).  On examination, when Dr. Rothbaum removed Plaintiff's ace bandage, he noted she was moderately tender over the mid shaft of the right fourth metacarpal and  there was no evidence of synovitis. (TR. 413).  Dr. Rothbaum's impression included: status post repair, rotator cuff tear, right shoulder; and recent hand injury, possible metacarpal fracture. (TR. 414).  Although Dr. Rothbaum did not specifically describe limitations on handling, fingering, and feeling, he "anticipated within the 12-month period of time the claimant will not have any problems with handling, fingering, and feeling, nor problems reaching with the left arm." (TR. 416).

Subsequent to her visit to Dr. Rothbaum, Plaintiff continued to complain to treating providers about wrist and hand pain.  (*See* TR. 550 (in January 2009 Plaintiff received injection to her wrists);  TR. 519 (on April 28, 2009, Dr. Renteria indicated that Plaintiff, who was wearing a wrist brace, suffered from bilateral wrist pain);  TR. 543 (on April 26, 2009, Plaintiff who was wearing wrist braces, complained that her arms hurt from the shoulders down to her hands); TR. 544 (in May 2009 Plaintiff reported her wrists hurt when she was potting plants); TR. 679 (in December 2009, Plaintiff complained of bilateral wrist pain); TR. 657-58 (in January 2010, Plaintiff had acupuncture treatment for complaints of shoulder pain radiating to her wrists).

As the ALJ noted, Plaintiff's treating medical providers, Drs. Renteria and Garcia, opined that Plaintiff was unable to push and pull, or do fine manipulation or repetitive tasks

1    with her left and right hands. (*See* TR. 26; *see also* TR. 513 (Dr. Renteria); 545 (Dr.

2    Garcia)).[7] The ALJ rejected these opinions because:

3           They are too restrictive when viewed in light of the contemporaneous
            treatment records and diagnostic testing results. They are inconsistent with the
4           overall record. The treatment records primarily summarize the claimant's
            subjective complaints, diagnoses and treatment, but do not present objective
5           clinical or laboratory diagnostic findings that support such limited
            assessments. For example, in July 2008, the claimant was deemed able to
6           return to her work as an assistant cook.

7    (TR. 26). The ALJ instead gave substantial weight to Dr. Rothbaum's opinion that Plaintiff's

8    problems with handling, fingering, and feeling were not expected to last more than 12

9    months. (*Id.*).

10          Generally, the ALJ cannot reject a treating physician's opinion, even if it is

11   contradicted by the opinions of other non-treating doctors, unless she provides "specific and

12   legitimate reasons" supported by substantial evidence in the record. *Rollins v. Massanari,*

13   261 F.3d 853, 856 (9th Cir. 2001) (*citing Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.

14   1998)). Additionally, "an opinion of disability premised to a large extent upon the claimant's

15   own accounts of [her] symptoms and limitations may be disregarded, once those complaints

16   have themselves been properly discounted." *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.

17   1995); *see also Tonapetyan v. Halter,* 242 F.3d. 1144, 1149 (9th Cir. 2001) (same). On the

18   instant record as discussed *supra*, at IV.C.1., the ALJ did not properly discount Plaintiff's

19   credibility. Therefore, to the extent that the ALJ rejected Drs. Renteria's and Garcia's

20   opinions because they were based on Plaintiff's subjective complaints, such rejection is in

21   error. *See Sousa,* 143 F.3d at 1244-45 ("Because this improper discreditation of the lay

22   testimony [of plaintiff and her husband] formed the basis for the rejection of [plaintiff's

23   doctor's] analysis, that rejection fails.")

24          Further, although the ALJ relies on Dr. Sheppard's release of Plaintiff back to work

25   after rotator cuff repair, Dr. Sheppard is clear that Plaintiff is released to work "from the

26

27          [7]The doctors differed in their opinion as to whether Plaintiff could grasp: Dr. Renteria
28   indicated she could, and Dr. Garcia indicated she could not. (*See* TR. 513, 545).

1    shoulder standpoint...." (TR. 339 (although Dr. Sheppard indicated Plaintiff had full finger

2    motion, he also indicated wrist swelling of indeterminate etiology)).

3        The record is clear that Dr. Swe diagnosed Plaintiff with a combination of

4    inflammatory arthritis in her hands and wrists in August 2007. (TR. 248). In July 2008, Dr.

5    Sheppard noted wrist swelling. (TR. 339). On September 29, 2008, after Plaintiff had fallen,

6    Dr. Renteria found swelling in her right hand along with moderate pain on movement. (TR.

7    382-83). When Plaintiff saw examining Dr. Rothbaum the following day, he noted moderate

8    tenderness over the mid shaft of the right fourth metacarpal and his assessment included

9    possible metacarpal fracture with limitations not lasting more than 12 months. (TR. 413-14).

10   Regardless, Plaintiff continued to complain about and receive treatment for hand and wrist

11   pain through 2010. However, as Defendant correctly points out, although Plaintiff's doctors

12   note her complaints, they do not indicate objective observations concerning Plaintiff's wrists

13   or hands other than that she is wearing wrist braces. (*See* Defendant's Brief, pp. 10-11).

14   Likewise, although Dr. Rothbaum suggested manipulative limitations, he did not indicate a

15   specific reason to support his opinion that such limitations would not last more than 12

16   months.[8] What is clear is that Plaintiff was diagnosed in 2007 with inflammatory arthritis

17   in her hands and wrists (*see* TR. 248) and there is nothing in the record to support the

18   conclusion that such diagnosis was mistaken or that the condition has abated over time.

19   Instead, Plaintiff has consistently complained about hand and wrist pain and she has received

20   treatment for same.

21       Dr. Rothbaum's opinion can be read to indicate that at the time of the 2008 consulting

22   examination, Plaintiff had some manipulative limitations with regard to her upper

23   extremities. Arguably, this opinion is consistent with opinions from Drs. Renteria and Garcia

24

25

26       [8]Given the proximity in time between Plaintiff's fall and her appointment with Dr.
     Rothbaum, it may well be that Dr. Rothbaum attributed any limitations he found to the recent fall
27   rather than to some other underlying cause and, thus, opined that Plaintiff's condition would
     improve within 12 months once she healed from injury caused by the fall. The record simply does
28   not reflect his rationale.

that Plaintiff had such limitations. A divergence occurs based on Dr. Rothbaum's opinion that the limitations would not last more than 12 months. The proximity in time between Plaintiff's fall and Dr. Rothbaum's examination calls into question Dr. Rothbaum's assessment concerning the duration of Plaintiff's manipulative limitations. Given Dr. Swe's 2007 diagnosis and Plaintiff's continued complaints of wrist and hand pain through 2010, the ALJ's decision to accept Dr. Rothbaum's 2008 opinion that such limitations would resolve within 12 months without having a specific basis therefor is especially troubling considering that all three jobs the ALJ, through VE testimony,  identified Plaintiff could do require "handling" which may include "fasten[ing] parts together by hand, or using handtools or portable power tools" (DOT 706.687-010),  use of scissors to trim garments, and folding garments.  (DOT 789.687-070).  *See Dictionary of Occupational Titles–Parts* (4th ed., Rev. 1991) (stating that "7"  listed as the sixth digit in the worker function code of the occupational definition indicates that "handling" things is involved); *see also* DOT 230.687-010 (stating that an advertising material distributor distributes merchandise samples, coupons).

On the instant record, the ALJ's adoption Dr. Rothbaum's opinion that the specified limitations on Plaintiff's upper extremities would not last more than 12 months is not supported by specific and legitimate reasons.[9]

---

[9]Although the ALJ did not find that Plaintiff suffered from a severe impairment regarding her hands and wrists, the ALJ "[i]n assessing RFC,...must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do."  SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996).

3.    Plaintiff's Mental Limitations

Sharon Megalthery, M.D., Plaintiff's treating psychiatrist, assessed "M[ajor] D[epressive] D[isorder], chronic, recurrent without psychotic features, P[ost] T[raumatic] S[tress] S[yndrome] with dissociation; G[eneralized] A[nxiety] D[isorder]; Somatoform Disorder Not Otherwise Specified; Trichotillomania." (TR. 605).  Dr. Megalthery opined that Plaintiff was moderately limited, when triggered, in: activities of daily living; maintaining social functioning; and concentration, persistence or pace.  (TR. 701).  Dr. Megalthery also found that Plaintiff has experienced two episodes of decompensation, each of extended duration.  (*Id.*).  At the hearing, when Plaintiff's counsel asked the VE if a person who had moderate restrictions in activities of daily living, maintaining social functioning, and in concentration, persistence and pace could perform the jobs identified, the VE answered "No...."  (TR. 72).

When considering Dr. Megalthery's opinion regarding Plaintiff's moderate limitations (*see* TR. 701), the ALJ stated, in pertinent part:

> This assessment is given evidentiary weight to the extent it is consistent with the above residual functional capacity finding the claimant capable of simple work with limited contact with the general public.  The undersigned notes that there is no evidence of any episodes of decompensation in the record.

(TR. 27).

Plaintiff initially argued that the ALJ's rejection of Dr. Megalthery's opinion "without comment" was erroneous given that the opinion was uncontroverted and could be rejected only for clear and convincing reasons.  (Plaintiff's Brief, p. 10).  Defendant countered that

> the ALJ in fact adopted Dr. Megalthery's opinion that Plaintiff had moderate difficulties in maintaining social functioning and that she had moderate deficiencies of concentration, persistence or pace.  (T[R]. 23, 701).  Indeed, when evaluating Plaintiff's mental impairment...the ALJ reasonably found that Plaintiff had moderate difficulties with social functioning and moderate difficulties maintaining concentration, persistence, or pace in accordance with Dr. Megalthery's opinion (T[R]. 23, 701)....The ALJ then reasonably accounted for Plaintiff's limitations in social functioning and maintaining concentration, persistence, or pace by limiting her to jobs that involved only simple work with minimum contact with the general public in his [sic] residual functional capacity finding....The ALJ, however, declined to adopt Dr. Megalthery's opinion that Plaintiff had moderate restriction in activities of daily living and that she had experienced one or two episodes of decompensation, each of extended duration.

(Defendant's Brief, pp. 14-15). Plaintiff replies that the ALJ "failed to give any reasons for rejecting parts of the doctor's opinion. While not obligated to accept the doctor's opinion, the ALJ must give pertinent reasons for rejecting some parts of the opinion and not others." (Plaintiff's Reply, p. 4).

Given Plaintiff's concession that the ALJ accepted some "parts" and rejected other portions of Dr. Megalthery's opinion, what is left for consideration, then, is the ALJ's findings that Plaintiff was not moderately restricted in activities of daily living and there was no evidence of episodes of decompensation.

The opinions of treating physicians, like Dr. Megalthery, are generally given greater weight than those of other physicians because of the treating physicians' intimate knowledge of the claimant's condition. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir.2001). Further, to reject the uncontroverted opinion of a treating physician, the ALJ is required to provide clear and convincing reasons. *Connett,* 340 F.3d at 874. The parties do not dispute that Dr. Megalthery's opinion was uncontroverted. The ALJ's statement that Dr. Megalthery's "assessment is given evidentiary weight to the extent it is consistent with the..." ALJ's RFC finding (TR. 27) does not  fulfill the ALJ's burden of stating clear and convincing reasons why Dr. Megalthery's opinion was rejected with regard to restrictions on Plaintiff's daily activities. In rejecting a doctor's opinion, "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctor['s]s[], are correct." *Reddick,* 157 F.3d at 725. Elsewhere in her decision, the ALJ, without referring to Dr. Megalthery's assessment, concluded that Plaintiff was only mildly restricted in activities of daily living: "The claimant is able to prepare simple meals, care for her pets, do some limited household chores, go outside and drive on occasion." (TR. 23). However, the ALJ has noted Plaintiff's testimony that she last drove in 2008 (TR. 25) and  the ALJ omitted reference to Plaintiff's testimony that she must rest when doing household chores and that she takes more time than is typically required to accomplish them.   The ALJ has provided no clear and convincing reasons why her own conclusions concerning Plaintiff's daily activities should be accorded more weight than

treating Dr. Megalthery's opinion.  Defendant states that Plaintiff was able to visit with her

children, go grocery shopping with her boyfriend, and was assessed Global Assessment of

Functioning scores "that ranged from 60 to 75, which either indicated that her symptoms

ranged from being moderate to being transient...." (Defendant's Brief, p. 15).  Defendant's

post-hoc justifications cannot serve as sufficient predicate for agency action.  *See Pinto v.*

*Massanari,* 249 F.3d 840, 848 (9th Cir. 2001) ("we cannot affirm the decision of an agency

on a ground that the agency did not invoke in making its decision."); *Vista Hill Found. v.*

*Heckler,* 767 F.2d 556, 559 (9th Cir. 1985) (same).[10]

The ALJ also stated that the record did not reflect evidence of decompensation.  (TR.

27).[11]  Plaintiff does not cite to evidence that suggests this finding is in error.

---

[10]Defendant argues that the form completed by Dr. Megalthery is not used in the RFC assessment, but is instead pertinent to rating the severity of mental impairments as steps 2 and 3.  (Defendant's Brief, p. 15).  At step 2, the ALJ determined that Plaintiff had only mild restrictions in activities of daily living, despite Dr. Megalthery's opinion that such limitations were moderate.  (*See* TR. 22-23).  The ALJ's finding at step 2 informed her subsequent RFC assessment.  Yet, the ALJ never provided sufficient reasons for discounting Dr. Megalthery's opinion that Plaintiff was moderately restricted in activities of daily living.

[11]The regulations provide that:
Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 4, Subpt. P, App. 1 §12.00(C)(4).

- 19 -

1

### 4. Lay Witness Testimony

2      Plaintiff contends that the ALJ rejected statements from lay witnesses without

3 providing any reason. (Plaintiff's Brief, p. 12). Lay testimony regarding a claimant's

4 symptoms is competent evidence that the ALJ must consider unless "he or she expressly

5 determines to disregard such testimony and gives reasons germane to each witness for doing

6 so." *Lewis v. Apfel,* 236 F.3d 503, 511 (2001) (citation omitted).

7      Plaintiff submitted lay witness statements from her daughter, Veronica Canez, and a

8 friend, Melissa Monreal. (Defendant's Brief, p. 21). Defendant asserts that "Plaintiff ignores

9 that the ALJ specifically noted that these lay witness statements essentially supported the

10 testimony of Plaintiff that she had disabling symptoms and limitations; yet the ALJ rejected

11 these lay witness statements because they were not substantiated by the overall medical

12 evidence, as discussed in the evaluation of Plaintiff's credibility." (*Id.*). In light of the

13 Court's decision *supra,* at IV.C.1., that the ALJ improperly rejected Plaintiff's credibility

14 which, in turn, may have affected the ALJ's assessment of the medical evidence, the ALJ's

15 reasons for rejecting the lay witness testimony is undermined on the instant record.

16

### 5. Remand

17      Plaintiff requests that the Court either reverse the Commissioner's decision and grant

18 benefits or, alternatively, remand for further proceedings. (Plaintiff's Brief, p.1; Plaintiff's

19 Reply, p. 6).

20      "'[T]he decision whether to remand the case for additional evidence or simply to

21 award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763

22 (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for

23 further administrative proceedings is appropriate if enhancement of the record would be

24 useful." *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel,*

25

26 _____

27

28

211 F.3d 1172, 1178 (9th Cir. 2000)).   Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke,* 379 F.3d at 593(citations omitted).   Where the test is met, "we will not remand solely to allow the ALJ to make specific findings....Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id.* (citations omitted).

Here, remand for an immediate award of benefits is inappropriate given that the record remains unclear regarding limitations, if any, on Plaintiff's upper extremities.  The proximity in time between Plaintiff's fall and Dr. Rothbaum's examination calls into question Dr. Rothbaum's opinion that limitations on handling, fingering, and feeling would resolve within 12 months, thus requiring further development of the record. *See Tonapetyan,* 242 F.3d at 1150 (the ALJ has a duty to develop the record fully and fairly, even when the claimant is represented by counsel).  Moreover, the ALJ has not met her burden of stating clear and convincing reasons for rejecting Dr. Megalthery's opinion regarding Plaintiff's restrictions in activities of daily living.  Based on the VE's testimony, whether Plaintiff is mildly or moderately restricted in activities of daily living may affect whether Plaintiff is able to perform other work. (*See* TR. 72).  As Defendant points out, at steps 4 and 5, the ALJ must make "a more detailed [mental RFC] assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in12.00 of the Listing of Impairments..." and summarized in the form similar to that completed by Dr. Megalthery. (Defendant's Brief, pp. 14-15 (*quoting* SSR 96-8p, 1996 WL 374184 at *4 (1996))).  Further, "[i]n cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, [the Ninth Circuit has] consistently...remanded for further proceedings rather than payment of benefits." *Harmon,* 211 F.3d at 1180 (citation omitted); *see also Hill v. Astrue,* 698 F.3d

1    1153, 1162 (9ᵗʰ Cir. 2012).  Alternatively, on remand, "the...[Commissioner] may decide to

2    award benefits."  *See McAllister v. Sullivan,* 888 F.2d 599, 604 (9ᵗʰ Cir. 1989).

3    **V.      CONCLUSION**

4              For the foregoing reasons, remand for further proceedings is necessary to consider

5    whether Plaintiff is disabled under the Social Security Act. Accordingly,

6              IT IS ORDERED that the Commissioner's final decision in this matter is

7    REMANDED for further proceedings consistent with this Order.

8              The Clerk of Court is DIRECTED to:

9              (1)      amend the docket to reflect that Carolyn W. Colvin, Acting Commissioner of

10                       the Social Security Administration, has been substituted as the named

11                       Defendant in this action pursuant to Fed.R.Civ.P. 25(d); and

12             (2)      enter judgment and close this case.

13             DATED this 15ᵗʰ day of March, 2013.

14

15    _____

16                       Héctor C. Estrada
                         United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -